IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Joann Collins, | ) | Civil Action No. 8:13-cv-00076-RBH-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). Also before this Court is Plaintiff's motion to remand this action as a result of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g). [Doc. 19.] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

## PROCEDURAL HISTORY

On June 19, 2009, Plaintiff protectively filed an application for DIB, alleging an onset of disability date of May 30, 2009. [R. 91–97.] At the hearing before the ALJ, the onset of disability date was amended to August 12, 2009. [R. 13.] The claim was denied initially on December 3, 2009 [R. 79–82] and was denied on reconsideration by the Social Security Administration ("the Administration") on October 18, 2010. [R. 85–86.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on August 15, 2011, ALJ John S. Lamb conducted a de novo hearing on Plaintiff's claims. [R. 27–72.]

The ALJ issued a decision on September 23, 2011, finding that Plaintiff has not been under a disability as defined by the Act from August 12, 2009, through the date of the decision. [R. 13–22.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2014, and had not engaged in substantial gainful activity since August 12, 2009, the alleged onset date. [R. 15, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: anxiety, post traumatic stress disorder, panic disorder, depression, and degenerative disc disease of the spine. [R. 15, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 15, Finding 4.] The ALJ specifically considered Listings 12.04, 12.06, and 12.08 with respect to Plaintiff's mental impairments. [R. 16–17.]

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can stand, walk and sit 6 hours of an 8 hour workday. She can lift/carry 10 pounds frequently and 20 pounds occasionally. She would need a sit/stand option, at will. The claimant must never climb ladders, ropes or scaffold. She is limited to simple, routine, repetitive tasks with no ongoing public interaction and only occasional contact with coworkers and low stress; defined as occasional change in work setting and decision making.

[R. 17, Finding 5.] Based on this RFC finding, at Step 4, the ALJ determined Plaintiff could not perform her past relevant work as a spinner and hospital cleaner [R. 21, Finding 6]; but based on her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. 21, Finding 10.] On this basis, the ALJ found Plaintiff has not been under a disability as defined in the Social Security Act. [R. 22, Finding 11.] Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review. [R. 1–7.] Plaintiff filed this action for judicial review on January 7, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1. the ALJ improperly relied on the testimony of the vocational expert without eliciting an explanation for the conflict between his testimony and the DOT [Doc. 17 at 19–21];

2. the ALJ improperly weighed the opinions of the examining physician Dr. Tollison without legally sufficient reasons [*id.* at 21–36]; and,

3. new and material evidence exists from Plaintiff's treating physicians which requires remand to the Commissioner [*id.* at 36–39].

3

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ

1.    properly relied on the VE's testimony at Step Five because no apparent conflict existed between her testimony and the DOT [Doc. 26 at 15–19]; and

2.    properly weighed the medical opinions of non-examining State agency physician Dr. Neboschick, and two consultative psychological examiners, Drs. Harper and Tollison; and properly assigned little weight to Dr. Tollison's opinion  [*id.* at 19–28].

The Commissioner also contends that remand pursuant to Sentence Six is improper as Plaintiff has failed to show good cause for failing to present the "new" evidence to either the ALJ or the Appeals Council.  [*id.* at 29–33.]

## **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

6

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

**B.    *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th

Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

14

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

Plaintiff raises three main arguments: the ALJ improperly relied on the testimony of the vocational expert without eliciting an explanation for the conflict between his testimony and the DOT [Doc. 17 at 19–21]; the ALJ improperly weighed the opinions of the examining physician Dr. Tollison regarding Plaintiff's mental limitations without legally sufficient reasons [*id.* at 21–36]; and, new and material evidence exists from Plaintiff's treating physicians which requires remand to the Commissioner [*id.* at 36–39].  The Court agrees with Plaintiff's contention that the ALJ improperly disregarded or ignored Dr. Tollison's

17

opinion evidence, and, therefore, the ALJ's RFC determination is not supported by substantial evidence.

**Weighing of Medical Opinions**

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating

source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled,

the claimant's impairment or impairments meets or equals a listing, or the claimant has a

certain residual functional capacity).

### Brief Medical History

Plaintiff alleges disability due to "nerves and anxiety attacks." [R. 120.] According

to Plaintiff, she stopped working on May 30, 2009, because Dr. Myers told her to stop

working because of her nerves. [*Id.*] Records from Upstate Psychiatry, PA, show that

Plaintiff was treated for anxiety and depression by Dr. B. Rhett Myers from at least August

2008 to May 2011.  [*See* R. 205–11, 235–37, 320–23.]

On November 11, 2009, Plaintiff underwent a consultative mental status exam by

clinical psychologist Renuka R. Harper, Ph.D. ("Dr. Harper").  Dr. Harper indicated that she

reviewed the notes from Upstate Psychiatry and, while they were basically illegible, the

notes did indicate Plaintiff was prescribed Xanax at one time.  Dr. Harper noted that Plaintiff presented with complaints of panic attacks characterized by increased heart rate, confusion, shortness of breath, and withdrawal lasting 30 minutes to an hour off and on throughout the day. [R. 213.] Plaintiff indicated that her depression worsened after her father passed away on August 12, 2009.   Dr. Harper noted that symptoms of Plaintiff's depression include: dysphoric mood, anhedonia, sleep and appetite disturbance with 30 pound weight loss over the past three months, loss of energy, concentration difficulties, feelings of excessive guilt and worthlessness, and decreased frustration tolerance. [*Id.*] Plaintiff reported hearing a bell that her father used to ring when he was sick, as well as feelings of paranoia and distrust of others. [*Id.*]

Upon evaluation, Dr. Harper diagnosed Plaintiff with panic disorder with agoraphobia; post traumatic stress disorder; major depressive disorder, moderate (superimposed on dysthymia); and, personality disorder with paranoid traits.  [R. 215.] Dr. Harper also concluded that,

> [t]he claimant reports symptoms of chronic anxiety and depression. She also reports a long history of difficulty trusting people and getting along with them. Nonetheless, she was able to work fairly consistently up until recently. After her father's death, she reports a significant exacerbation of her symptoms. However, the results of the current exam suggest that the claimant is not be[ing] entirely credible and may be exaggerating symptoms at this time. Although she performed poorly on several of the mental status tasks, especially those assessing concentration, the claimant was noted to maintain adequate focus and concentration during the interview. She was able to understand and carry out simple instructions. Current report of function indicates that she still drives, cooks and helps to pay bills. Concentration and memory appear to be sufficient for 1-2 step instructions. However, she might have difficulty carrying out more complex or detailed tasks. There appear to be no more than moderate limitations with respect to

20

> cognitive functioning. The claimant visits with friends daily. She still does go out in public despite her panic symptoms and paranoid ideation. She was able to communicate and relate adequately during the exam. S[h]e should be capable of interacting appropriately with coworkers and supervisors in a work setting but may function best in a job that does not require interaction with the public. There appear to be no more than moderate limitations with respect to social functioning. The claimant is able to carry out most ADLs independently. She appears to be caring for her husband, who has some fairly significant health issues. There appear to be only mild limitations with respect to independent functioning, The claimant is probably capable of managing funds if benefits are awarded.

[R. 215.]

On December 2, 2009, a Psychiatric Review Technique Form ("PRTF") was completed on Plaintiff by Craig Horn, Ph.D. ("Dr. Horn"). [R. 216.]  Dr. Horn considered Plaintiff's medical disposition based on Listings 12.04, 12.06, and 12.08 for the period of time of May 30, 2009, through December 1, 2009. [*Id.*] Dr. Horn noted mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, and pace; and no episodes of decompensation. [R. 226.] Dr. Horn also concluded that Plaintiff had the ability to perform simple tasks away from the public. [R. 228.]

Additionally, Dr. Horn performed a  Mental RFC assessment on December 2, 2009, where he found Plaintiff was moderately limited in her ability to (1) understand and remember detailed instruction; (2) carry out detailed instructions; (3) work in coordination with or proximity to others without being distracted by them; and (4) interact appropriately with the general public. [R. 230–31.] Dr. Horn opined that,

She is able to remember location and work-like procedures. She is able to understand and remember short and simple instructions.

She is able to carry out very short and simple instructions, but could not carry out detailed instructions.   She is able to understand normal work-hour requirements and be prompt within reasonable limits. She retains the ability to make simple work-related decisions.

She has the capacity to ask simple questions and request assistance from peers or supervisors. She would perform best in situations that do not require on-going interaction with the public.

She would respond appropriately to changes in a routine to be aware of personal safety and avoid work hazards.  She retains the capacity to travel to and from work using available transportation.

[R. 232.]

On October 6, 2010, a subsequent PRTF was completed by Michael Neboschick,

Ph.D. ("Dr. Neboschick") assessing Plaintiff's medical condition under Listings 12.04, 12.06,

and 12.08. [R. 293.] Dr. Neboschick found Plaintiff had mild restrictions in her activities of

daily living; moderate difficulties in her social functioning; moderate difficulties in

maintaining concentration, persistence, or pace; and no episodes of decompensation. [R.

303.] Dr. Neboschick reviewed the evidence used to determine the ratings provided by Dr.

Harper and, because there was no evidence of any worsening of condition, or evidence that

the Plaintiff's limitations were greater than moderate, Dr. Neboschick adopted the prior

decision of Dr. Harper.  [R. 305.]

Dr. Neboschick also conducted a Mental RFC on October 6, 2010, and found that

Plaintiff was moderately limited in her ability to (1) understand and remember detailed

instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for

22

extended periods of time; (4) complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; and (6) respond appropriately to changes in the work setting. [R. 307–08.]

On July 19, 2011, clinical psychologist C. David Tollison, Ph.D. ("Dr. Tollison") with the Carolinas Center for Advanced Management of Pain conducted a diagnostic evaluation of Plaintiff. [*See* R. 312–16.] Dr. Tollison noted that during the mental examination Plaintiff was able to provide basic information on herself. [R. 314.] Dr. Tollison administered the WRAT III, which indicated Plaintiff read on a third-grade level, and the MMPI-2, which showed the results as statistically valid. [*Id.*] Dr. Tollison also noted that MMPI interpretation evidenced rather extreme elevations in anxiety and depression and that "[t]he profile is consistent with that frequently encountered in individuals who lack effective control over thoughts, feelings and behavior." [R. 314–15.] Dr. Tollison opined that Plaintiff

> likely feels riddled and controlled with agitation and anxiety-related symptoms. She may find it difficult if not impossible to relax. Her mind may tend to wander and to sometimes race to the point where she experiences emotional decompensation. She struggles with a significant intensity of cognitive internal turmoil and she may agonize, ruminate, and dwell excessively on multiple situations in her life that she has little if any control over. She is highly suspicious of others and likely is hypervigilant when around people. She may feel threatened and vulnerable and, therefore, remain chronically "on guard" in an effort to protect herself from perceived threats. Coping skills and adaptive behaviors appear poor. Consequently, psychological factors likely are felt to be flooding and overwhelming to her. Cognitive functioning appears impaired, likely due to the distracting nature of her psychiatric symptoms. Her anxiety level may escalate, periodically, to levels of panic. She does complain of more than

23

> the usual number of physical complaints and pain problems. During panic she may well internalize her emotional stress and channel through somatic outlets, thereby experiencing "blackouts." Associated with her depression are likely to be feelings of anhedonia, helplessness, hopelessness, worthlessness, uselessness, and devaluation of self.  She appears riddled with feelings of guilt, remorse, and despair.

[R. 315.] Dr. Tollison diagnosed Plaintiff with anxiety-related disorder (generalized anxiety as well as panic disorder with agoraphobia); major depressive disorder; unresolved and prolonged grief reaction; pelvic and hip pain; and a GAF of 45. [*Id.*] Dr. Tollison concluded that,

> [b]ased upon my evaluation of the patient, review of medical records, and results of psychological testing, it is my opinion Ms. Collins does not exhibit the ability to maintain concentration over time, being distracted by the scope and severity of her psychiatric illness.  It is further unlikely she could perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and interact effectively with others.  She is quite labile and psychological fragile and it is unlikely she could complete a series of workdays without interruption from psychological symptoms. Due to her lack of security and feelings of vulnerability with panic, it is unlikely she could respond appropriately to changes in the workplace. She would require some rather detailed and constant supervision. Work pressures, stresses, and demand situations are expected to result in marked deterioration in psychological functioning.  Her condition is chronic and expected to continue over the next twelve or more months. If awarded funds, Ms. Collins is capable of managing funds.

[R. 316.]

### *ALJ's Treatment of Dr. Tollison's opinion*

The ALJ explained his consideration of Dr. Tollison's opinion as follows:

> I have given little weight to Dr. Tollison's opinion in 13F. His opinion directly conflicts with that of Dr. Harper.  Even though Dr. Tollison was aware of Dr. Harper's examination, he failed to attempt to explain the difference or acknowledge the claimant's possible exaggerated symptoms. Dr. Tollison apparently relied quite heavily on the subjective report of

symptoms and limitations provided by the claimant. In fact, hospital records from Columbus County Hospital provided that, the claimant denied anxiety, depression and emotional problems (7F/22). The claimant's symptoms are mild enough to forgo specialized treatment. Dr. Meyers of Upstate Psychiatry, treating doctor, has not restricted the claimant from work. In fact, in June 2009 he returned the claimant to work on July 6, 2009 (2F/4).  Furthermore, I note that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal.  Dr. Tollison's opinion contrasts sharply with the other evidence of record, which renders it less persuasive. His opinion is inconsistent with activities of daily living noted above in "B" criteria." The opinion expressed is quite conclusory, providing little explanation of the evidence relied on in forming his opinion. Dr. Tollison does not have a treating relationship with the claimant. I note that Dr. Tollison met with the claimant only once and had no opportunity to follow the claimant's symptoms and limitations over time.

[R. 20–21.]

### *Analysis*

While it is squarely within the realm of the ALJ's duties to resolve conflicts in medical evidence, SSR 96–2p requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5, 61 Fed.Reg. 34490, 34492 (July 2, 1996).  Upon review of the ALJ's decision, the Court finds that this required explanation is lacking.

The ALJ concluded that Dr. Tollison's opinion contrasts sharply with the other evidence of record, rendering it less persuasive.  A review of the record, however, does not

support the ALJ's conclusion.  The opinions of record at issue in this matter all appear to be from mental health professionals who did not treat Plaintiff over a long period of time, but who have formed opinions based on communications with Plaintiff and / or based on a review of her medical history.  While Drs. Harper and Horn are of the opinion that Plaintiff retains the ability to engage in work involving simple instructions and no interaction with the public [*see* R. 215, 232], Drs. Neboschick and Tollison have opined that Plaintiff may be limited in her ability to complete a normal work-day or work week without interruption from psychologically based symptoms and/or perform activities within a schedule [*see* R. 308, 316].  A determination on the legitimacy of this limitation is important to the ALJ's decision because testimony elicited from the vocational expert suggests that an individual must be able to stay on task for two hours before taking scheduled breaks; an inability to do so would render the individual unemployable in competitive employment. [R. 68.]

A thorough review of the ALJ's decision fails to explain how the ALJ resolved the conflict in evidence with respect to Plaintiff's potential limitation in her ability to complete a full work-day and/or perform activities within a schedule as raised by Dr. Tollison and reiterated by Dr. Neboschick.  The ALJ gave little weight to Dr. Tollison's opinion describing it as "quite conclusory, providing little explanation of the evidence relied;" yet, the ALJ's decision failed to address his weighing of opinion evidence presented by Dr. Neboschick [R. 308] which is consistent with Dr. Tollison's opinion and contradicts the ALJ's conclusion regarding Plaintiff's legitimate functional limitations.  Because the ALJ failed to specifically address this opinion evidence, the Court cannot find that the decision is supported by substantial evidence.

26

Additionally, the ALJ gave little weight to Dr. Tollison's opinion for two other reasons that the Court finds to be not based on substantial evidence or incorrect under the law. The ALJ discounted Dr. Tollison's opinion because Plaintiff's symptoms were mild enough to forgo specialized treatment. However, the ALJ failed to explain what specialized treatment he found lacking, and Dr. Myers, a psychiatrist, was regularly treating Plaintiff during the course of several years. In other words, because Plaintiff was receiving treatment for her mental illnesses from Dr. Myers, substantial evidence does not support the ALJ's decision to discount Dr. Tollison's medical opinion due to her lack of receiving specialized treatment. Further, the ALJ discounted Dr. Tollison's opinion because Plaintiff was referred to Dr. Tollison by her attorney "in connection with an effort to generate evidence for the current appeal" and "not in an attempt to seek treatment for symptoms." [R. 20.] Whether counsel for Plaintiff assisted her with obtaining an evaluation by Dr. Tollison should not be considered by the ALJ; the ALJ should decide what weight to give a medical opinion by considering the factors set out in 20 C.F.R. § 404.1527. *See Cureton v. Astrue*, C/A No. 1:09-2342-TLW-SVH, 2011 WL 903032, at *17 (D.S.C. Jan. 28, 2011) (on remand "the ALJ should not be swayed by the fact that Plaintiff's counsel was involved in having Dr. Salmon perform the evaluation"), *adopted*, 2011 WL 900118 (D.S.C. March 15, 2011); *Hendrix v. Colvin*, C/A No. 5:12-1353-JMC, 2013 WL 2407126 at *5–6 (D.S.C. June 3, 2013) (noting that a medical opinion may not be discounted by the ALJ merely because counsel requested it or the purpose for which it was obtained). Thus, because the ALJ's decision improperly discounted Dr. Tollison's medical opinion based the fact that Plaintiff's counsel requested it, the Court cannot find that the decision is supported by substantial evidence.

27

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly consider and weigh the medical opinions of record is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

<u>**CONCLUSION AND RECOMMENDATION**</u>

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.  Further, if the Court's recommendation is accepted, Plaintiff's motion to remand [Doc. 19] should be terminated as moot.

IT IS SO RECOMMENDED.


May 19, 2014                                      s/Jacquelyn D. Austin
Greenville, South Carolina                  United States Magistrate Judge