IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Joann Collins, | ) | C/A No.: 8:13-00076-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Joann Collins, brought this action pursuant to 42 U.S.C. §§ 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of that Act provides: "[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see*, *e.g.*, *Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See*, *e.g.*, *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th

Cir. 1972). As noted by Judge Sobeloff in *Flack v.Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id*. at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Plaintiff protectively filed an application for DIB on June 19, 2009, alleging disability since May 30, 2009 due to anxiety, posttraumatic stress disorder, panic disorder, depression, and degenerative disc disease of the spine. Plaintiff's claims were denied initially and upon reconsideration. The plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on August 15, 2011. At the hearing, the claimant (through counsel) amended her alleged onset date to August 12, 2009. The ALJ thereafter denied plaintiff's claims in a decision issued on September 23, 2011. The Appeals Council denied the plaintiff's request for review and the ALJ's findings became the final decision of the Commissioner of Social Security. Plaintiff then appealed to the federal district court.

The claimant is a 55-year-old female[1] who has a high school education. Her past work experience includes employment as a spinner and a hospital cleaner.

Under the Social Security Act, the plaintiff's eligibility for the benefits she is seeking hinges on whether she "is under a disability." 42 U.S.C. § 423(a)(1)(D). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

---

[1] The claimant was 50 years old on the amended alleged onset date.

expected to last for a continuous period of not less than 12 months . . . " *Id*. at § 423(d)(1)(A). The burden is on the claimant to establish such disability. *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the individual's (1) "residual functional capacity," *id*. at § 404.1561; (2) age, *id*. at § 404.1563; (3) education, *id*. at § 404.1564; (4) work experience, *id*. at § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id*. at § 404.1561. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id*. at § 404.1561. The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from

performing some other available work.

The ALJ made the following findings in this case:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since August 12, 2009, the amended alleged onset date (20 CFR 404.1471, *et seq.*).

3. The claimant had the following severe impairments: anxiety, posttraumatic stress disorder, panic disorder, depression, degenerative disc disease of the spine (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  The claimant can stand, walk and sit 6 hours of an 8 hour workday.  She can lift/ carry 10 pounds frequently and 20 pounds occasionally.   She would need a sit/stand option, at will.  The claimant must never climb ladders, ropes or scaffold.  She is limited to simple, routine, repetitive tasks with no ongoing public interaction and only occasional contact with co-workers and low stress; defined as occasional change in work setting and decision making.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 31, 1959 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1564)

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not an issue in this case because the claimant's past  relevant work is unskilled (20 CFR 404.1568).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569)a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 12, 2009, through the date of this decision (20 CFR 404.1520(g)).

Pursuant to Local Civil Rule 83.VII.02(A), D.S.C, this action was referred to a United States Magistrate Judge.  In her petition for judicial review, Plaintiff asserts that (1) the ALJ improperly relied on the testimony of the vocational expert without eliciting an explanation for the conflict between his testimony and the DOT; (2) the ALJ improperly weighed the opinions of the examining physician Dr. Tollison without legally sufficient reasons; and (3) new and material evidence exists from Plaintiff's treating physician, Dr. Myers, which requires remand.

On May 19, 2014, Magistrate Judge Jacquelyn D. Austin filed a report and recommendation ("R&R") suggesting that the action should be remanded to the Commissioner to properly weigh and consider the medical opinion of clinical psychologist, Dr. Tollison, who conducted a diagnostic evaluation of the claimant.   She further recommended that the remaining issues raised should be taken into consideration on remand.  The defendant timely filed objections to the R&R on June 5, 2014.  Plaintiff filed a Reply on June 23, 2014; defendant filed a sur-reply on June 30, 2014.

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objections is made.  However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed.  While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations

omitted).

**Commissioner's Objections**

In her objections to the R&R, the Commissioner contends that the magistrate judge erred in recommending that the case be remanded for further findings as to the opinion of Dr. Tollison. The Commissioner contends that the ALJ's evaluation of the medical evidence was supported by substantial evidence.

In order to properly analyze this case, this Court must first determine whether Dr. Tollison was a treating physician. The ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c). Generally, more weight is given to the opinion of an examining medical source than a non-examining source. 20 C.F.R. §§404.1527(c)(1), 416.927(c)(1). Also, greater weight is usually given to the opinions of treating sources than non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While an ALJ is under no obligation to accept any medical opinion, he must explain the weight given to such opinions. All medical opinions are evaluated using the same factors, found in 20 C.F.R. §§ 404.1527(c), 416.927(c). *See Saunders v. Colvin*, 2014 WL 1057024, No. 5:12-cv-775-D, at *8, note 2 (E.D.N.C March 17, 2014). Where a physician only sees a claimant once, he is not generally considered a treating physician. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)("[T]he opinion of a claimant's treating physician is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."); 20 C.F.R. § 404.1527(c).

The claimant only saw Dr. Tollison once and there was no evidence of a treating relationship. Therefore, he was not a treating physician under the regulations. However, in determining the

appropriate weight of his opinion, the factors set forth in 20 C.F.R. §§ 404.1527(d) should be reviewed. Those factors are: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion.

The ALJ gave "little weight" to Dr. Tollison's opinion. (Record at 20-21) He gave the following reasons for according the opinion "little weight": (1) Dr. Tollison's opinion directly contradicts that of consultative examiner, Dr. Harper, but he failed to explain why his opinion differed from the opinion of Dr. Harper; (2) Dr. Tollison relied on the claimant's report of subjective symptoms but failed to acknowledge the claimant's "possible exaggerated symptoms"; (3) Hospital records from Columbus County Hospital of May 29, 2010 showed that the claimant denied anxiety, depression and emotional problems; (4) The claimant's symptoms were mild enough to forego specialized treatment; (5) Dr. Myers, treating physician (psychiatrist) returned the claimant to work on July 6, 2009; (6) An attorney referred the claimant to Dr. Tollison; (7) Dr. Tollison's opinion "contrasts sharply with the other evidence of record"; (8) His opinion is "inconsistent with activities of daily living"; (9) The opinion is conclusory; and (10) Dr. Tollison saw the claimant only once and had no opportunity to follow the symptoms over time.

The ALJ generally applied the Section 404.1527 factors to Dr. Tollison. As to Factors (1) and (2), length of and extent of the treatment relationship, the ALJ pointed out that Dr. Tollison only met with the claimant one time and "had no opportunity to follow the claimant's symptoms and limitations

7

over time." He also observed that the claimant's attorney arranged the consultation.[2] (Record, p. 21) As to Factor (3), the evidence with which Dr. Tollison supported his opinion, the ALJ states that Dr. Tollison "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant." He also states that the opinion was conclusory and that Dr. Tollison provided "little explanation of the evidence relied on in forming his opinion." *Id.* Regarding the fourth factor, consistency of the opinion, the ALJ states that "Dr. Tollison's opinion contrasts sharply with the other evidence of record, which renders it less persuasive." (Record, p. 20) He also finds that the opinion is inconsistent with the claimant's activities of daily living. As to the fifth factor, Dr. Tollison is a specialist, as he is a licensed clinical psychologist, although the ALJ does not refer to this in his decision.

The Magistrate Judge recommended a finding that the ALJ failed to properly weigh the opinion of Dr. Tollison and that the case should be remanded under Sentence Four for proper consideration of his opinion. She first finds that the substantial evidence does not support the ALJ's conclusion that Dr. Tollison's opinion contrasts sharply with the other evidence of record. She states that the ALJ failed to consider that the opinion of Dr. Neboschick was consistent with Dr. Tollison's opinion and that both Tollison and Neboschick found that Plaintiff may be limited in her ability to complete a normal work day without interruption due to psychologically based symptoms. She further notes that the vocational expert suggested that an individual must be able to stay on task for two hours before taking a scheduled break in order to perform the jobs available, considering the claimant's RFC, in the national economy. The Commissioner asserts in her objections that the opinion of Dr. Neboschick does not contradict the

---

[2] The Court will discuss the plaintiff's contention that the ALJ erroneously relied on the attorney referral to discredit Dr. Tollison hereinafter.

8

ALJ's RFC assessment and that the Magistrate Judge erroneously equated Dr. Neboschick's finding that Plaintiff was "moderately limited" in her "ability to complete a normal workday or workweek without interruptions (Tr. 308) with an opinion that Plaintiff could not stay on task for two hours without taking unscheduled breaks." (ECF No. 33, p. 2) The Commissioner cites POMS DI 25020.010.B.1, indicating that adjudicators should refer to Section III of the Mental RFC form, which is the written narrative rather than Section I, which is a list of mental activities and the claimant's degree of limitation for performing those activities. The Commissioner asserts that Dr. Neboschick translated the moderate concentration deficits in Section I into a narrative opinion that the claimant retained the mental capacity for simple work in two-hour time blocks.

The claimant responds that the Magistrate Judge did not state that Dr. Neboschick found that the claimant "could not stay on task for 2 hours without taking unscheduled breaks." (ECF No. 34, p. 2) Instead, the claimant cites the R&R as stating that a "determination on the legitimacy of this limitation is important to the ALJ's decision because testimony elicited from the vocational expert suggests that an individual must be able to stay on task for two hours before taking scheduled breaks; an inability to do so would render the individual unemployable in competitive employment."

The Commissioner responds in a sur-reply that the Magistrate Judge's finding that Neboschick's opinion comports with Tollison's report and contradicts the ALJ's RFC analysis constituted an impermissible weighing of the evidence. The Court agrees. Although Neboschick found in Part I of the MRFC that the claimant was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Record at 308), he concluded in his functional assessment found at Part III:

9

> The cl is able to understand and remember simple instruction. Sustain attention for simple, structured tasks for periods of 2 hour segments. . . Make simple work-related decisions . . . Works best in situations that do not involve direct, ongoing interaction w the public.

(Record, p. 309)

Neboschick adopts the prior opinion of Dr. Horn, another non-examining doctor.

The ALJ did not discuss Dr. Neboschick or Dr. Horn, both non-examining psychologists. However, he did adopt the "state agency limitations" in 10F, which was Neboschock's report. (Record 20) Neither party contends the ALJ should have discussed the state agency psychologists further. These limitations were adopted by the ALJ in his RFC assessment, limiting her to simple, routine, repetitive tasks with no ongoing public interaction and only occasional contact with co-workers and low stress. The limitations are consistent with the VE testimony that an individual must be able to stay on task for two hours before taking scheduled breaks in order to do the job of surveillance system monitoring. Substantial evidence supports the finding by the ALJ that the opinion of Dr. Tollison conflicts with the other medical evidence.

The Magistrate Judge also found that the ALJ's decision to discount Dr. Tollison's opinion because Plaintiff's symptoms were mild enough to forgo specialized treatment was not supported by substantial evidence, as the claimant was being treated regularly by Dr. Myers, a psychiatrist. The Court disagress. The ALJ noted in connection with his RFC finding that the claimant had stated to Dr. Tollison that she couldn't get around people and had thoughts of suicide but that "her symptoms are not severe enough to require treatment from a mental health clinic. In addition, she has not been hospitalized for psychiatric treatment." (Record, p. 20) He also pointed out that she had not undergone counseling and that Dr. Myers had found she could return to work in July of 2009. Substantial evidence supports the findings by the ALJ. The extent of the treatment by Dr. Myers was seeing the claimant

every 3 months and giving her a prescription for xanax.

Finally, the Magistrate found legal error by the ALJ in relying on the fact that her attorney referred the claimant to Dr. Tollison. Here, the ALJ did not reject the opinion of Dr. Tollison solely because of the attorney referral. Instead, he cited numerous other grounds, as already discussed. Therefore, any error in considering the fact the attorney referred the claimant to Dr. Tollison was harmless. *See Hendrix v. Colvin*, 2013 WL 2407126 *5-6 (D.S.C. June 3, 2013) (acknowledging the impropriety of discounting a medical opinion because of the purpose for which it was obtained, but affirming the final decision on grounds other substantial evidence supported the ALJ decision.)

This Court therefore finds that the ALJ's evaluation of the medical evidence was supported by substantial evidence.

**Claimant's Other Grounds of Appeal**

The claimant contends that the only job which the VE testified that she could perform was surveillance system monitoring and that this job has a reasoning level of 3 based on the DOT. She further argues that the limitation in the RFC to "simple, routine, repetitive tasks" correlates with a reasoning level of 1.[3] Therefore, she asserts that SSR 00-4p requires the ALJ to elicit an explanation from the VE concerning the discrepancy between her testimony and the DOT. The Court agrees.

Here, the VE was only able to name one job, surveillance system monitor, that the claimant could perform, considering her RFC. The DOT provides that a surveillance system monitor "[m]onitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit

---

[3] An individual who meets GED Reasoning level 1 has the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, 4th Ed., Rev. 1991, 1991 WL 688702.

11

television monitors, and notifies authorities by telephone of need for corrective action." DICOT 379.367-010, 1991 WL 673244. The DOT indicates that the job requires a General Educational Development ("GED") reasoning level of three. *Id*. Reasoning level three requires that an individual can "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT (4th Ed., Rev. 1991), 1991 WL 688702.

> Social Security Ruling 00-4p provides in pertinent part:
>
> When a [vocational expert ("VE")] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the ("DOT"). In these situations, the adjudicator will:
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE. . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 200 WL 1898704, at *4.

The Commissioner acknowledges a split of authority on this issue, and it does not appear that the Fourth Circuit has issued a decision regarding it. However, numerous district court judges within the Fourth Circuit, including this Court, have addressed the issue in unpublished decisions and found that cases should be remanded for further administrative proceedings where the ALJ failed to ask the VE whether a claimant limited to simple, repetitive work was capable of performing certain jobs that the DOT classified as reasoning level three. *See Tadlock v. Astrue*, No. 8:06-3610-RBH, at *10, 2008 WL 628591 (D.S.C. March 4, 2008); *Yurek v. Astrue*, No. 5:08-cv-500-FL, at *9, 2009 WL 2848859

(E.D.N.C. September 2, 2009). In fact, several cases specifically concerned surveillance system monitor jobs. *See Shivers v Colvin*, No. 6:12-3381-SB, at *4, 2014 WL 1315183 (D.S.C. March 28, 2014); *Martin v. Astrue*, No. 6:11-1572-TMC, 2012 WL 4482943 (D.S.C. Sept. 27, 2012)(adopting Report of Magistrate Judge McDonald found at 2012 WL 4479280); *Patterson v. Astrue*, No. 8:07-1602-HFF, at *4, 2008 WL 2944616 (D.S.C. July 31, 2008).

The Commissioner asserts that the ALJ specifically instructed the VE to advise him if any of her responses conflicted with information in the DOT; the VE acknowledged her obligation to do so (Tr. 59); and the VE did not identify any conflict between the DOT and her testimony that an individual with the claimant's RFC could perform the job of surveillance systems monitor. However, here, there is a potential conflict between what the claimant is capable of performing and what the job of surveillance monitor requires. As the ALJ did not discuss with the VE whether the claimant's inability to perform more than simple, repetitive work was consistent with the job, the Court cannot speculate that the VE recognized the conflict and considered it.

The Commissioner also asserts that the claimant's reliance on the DOT as definitive authority on job requirements is "misplaced" because the DOT definitions are generic job descriptions that state the "approximate maximum requirements for each position, rather than their range.", citing *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000). Nevertheless, SSR 00-4p provides that any apparent conflict between the VE evidence and the DOT must be explained by the VE as a part of the adjudicator's duty to develop the record.

Therefore, upon remand, the ALJ should be instructed to obtain vocational expert testimony as to any conflict between the reasoning level for the job identified by the VE and the limitations already imposed by the ALJ in his residual functional capacity evaluation.

13

The claimant has submitted as new evidence for the first time before this Court a questionnaire completed by Dr. Myers on April 11, 2013. (ECF No. 19-1) Where the Appeals Council did not have an opportunity to review the additional evidence, sentence six of 42 U.S.C. § 405(g) provides the appropriate standard of judicial review.  Under sentence six, the Court cannot remand based on new and material evidence unless the claimant also shows "good cause" for her failure to present the additional evidence in the prior proceeding. *See* 42 U.S.C. § 405(g).  Evidence is "new" if it is not duplicative or cumulative, and "material" if there is "a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff's counsel has made no attempt to document his or prior counsel's efforts to obtain Dr. Myers' input sooner, nor has he offered any explanation as to why Dr. Myers—who had been treating Plaintiff for eight years and was seeing her every three months at the time of her August 2011 hearing (Tr. 39, 314)—was unavailable prior to 2013 to provide a medical source statement concerning Plaintiff's alleged mental limitations.  Therefore, good cause has not been shown.

Even if the Court were to agree with Plaintiff's argument that good cause exists for her failure to present Dr. Myers' opinion at the administrative level, remand is not warranted because the new evidence is not material, i.e., there is no reasonable possibility that it would have affected the ALJ's decision. *See Wilkins*, 953 F.2d at 96.  Dr. Myers' opinion in 2013 that Plaintiff "most probably" had impairments that would cause problems with attention and concentration "since 2008" (Docket No. 19-1) appears inconsistent with allowing the claimant to return to work on August 17, 2009  (Tr. 205). In fact, the record indicates that, as recently as September 2009, Dr. Myers filled out a form indicating that Plaintiff could work (Tr. 236).  Therefore, notwithstanding the Fourth Circuit's preference for having

14

a fact-finder resolve conflicts in the evidence, *see Meyer v. Astrue*, 662 F.3d 662 F.3d 700, 707 (4th Cir. 2011), this is a case where the vague, conclusory, and contradictory nature of the treating source opinion is so apparent from the face of the questionnaire that there can be no "reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96. Therefore, this Court denies the plaintiff's motion to remand for consideration of the questionnaire completed by Dr. Myers.

## Conclusion

After carefully reviewing the record in this matter, the applicable law, and the positions of the parties, the court respectfully declines to adopt the recommendation of the Magistrate Judge and remands the case to the Commissioner for further findings on a different basis than that suggested by the Magistrate Judge. The Commissioner's decision is reversed under Sentence Four of 42 U.S.C. § 405(g) and remanded for further proceedings in accordance with this order.

**IT IS SO ORDERED**.

s/R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

September 11, 2014  
Florence, South Carolina